UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED FOOD AND COMMERCIAL :
WORKERS UNION AND MIDWEST :
HEALTH BENEFITS FUND, :
Individually and on behalf of all :
others similarly situated, :
                                                    :          CLASS ACTION COMPLAINT
                    Plaintiff, :
                                                    :
            v. :
                                                    :          JURY TRIAL DEMANDED
                                                    :
SMITHKLINE BEECHAM CORP., :          CIVIL ACTION NO.
d/b/a GLAXOSMITHKLINE, INC. :
                                                    :
                    Defendant. :
_____ :

## **CLASS ACTION COMPLAINT**

1.      Plaintiff, on its own behalf and on behalf of all others similarly

situated, brings this action under Section 16 of the Clayton Act, 15 U.S.C. §

26, for injunctive relief including equitable disgorgement, and the costs of

suit, including reasonable attorneys' fees, against Defendant for violation of

Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

2.      In connection with Count II, Plaintiff also brings this action on

behalf of itself and a class of consumers, like Plaintiff, who purchased

Augmentin® ("Augmentin") in Arizona, Arkansas, California, District of

Columbia, Florida, Iowa, Kansas, Louisiana, Maine, Massachusetts,

Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New

Mexico, New York, North Carolina, North Dakota, Ohio, South Dakota,

Tennessee, Vermont, Virginia, Washington, West Virginia and Wisconsin (the Indirect Purchaser States).

3.      In connection with Count III, Plaintiff beings this action on behalf of itself and a class of consumers, like Plaintiff, who purchased Augmentin in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and West Virginia.

4.      In connection with Count IV, Plaintiff brings this action on behalf of itself and the class seeking restitution and disgorgement of the unjust enrichment under the common law of the fifty states.

## BACKGROUND

5.      Augmentin, a brand name prescription drug, is a broad-spectrum oral antibacterial combination consisting of the antibiotic amoxicillin and potassium clavulanate.  Augmentin is used to treat a wide range of common bacterial infections, especially respiratory infections. Augmentin and its component parts are the subject of a number of patents,

which Defendant contended went well into the future. Defendant's revenues from Augmentin sales in the United States exceed $3 million per day.

6.      Defendant manufactures and markets Augmentin.

7.      Defendant has fixed the price of Augmentin at artificially high and supra-competitive levels.

8.      Defendant's period of legal exclusivity for Augmentin should have expired at least as early as December 25, 2001.

9.      Defendant has engaged in anti-competitive conduct designed to preserve its monopoly in the relevant market for Augmentin by preventing generic manufacturers from competing in the market for Augmentin and its generic equivalents.

10.      The anti-competitive acts of Defendant involve improper manipulation of and anticompetitive patent filings in the Orange book (defined below), which have enabled Defendant to extend restraints on competition. Defendant's anticompetitive acts of merely filing patents with the FDA for listing in the "Orange Book," even though Defendant knows that the patents do not relate to Augmentin, have the effect of delaying generic competition, regardless of whether the listing is proper. By manipulating the Orange Book, defendant can avail itself of the automatic stay provisions of the Hatch-Waxman Act that prevent generic manufacturers of Augmentin from coming to market.

11.     Generic pharmaceutical manufacturers have filed applications with the FDA requesting approval to market a generic version of Augmentin. In their applications to the FDA, these manufacturers have asserted that their products are bioequivalents to Augmentin and do not infringe any patent owned by or licensed to SmithKline Beecham Corporation.

12.     Because Defendant improperly listed patents as covering Augmentin in the Orange Book, it had the "right" to (and did) file patent infringement lawsuits against each one of these generic manufacturers as a result of these generic manufacturers' attempt to manufacture or market generic versions of Augmentin.  Because these lawsuits arose out of Defendant's Orange Book filings, the FDA is prevented by statute from granting final approval of generic formulations of Augmentin for thirty months from the commencement of patent infringement lawsuits.  This was exactly Defendant's purpose in manipulating the Orange book.

13.     Due to the conduct of Defendant, the FDA has approved no generic formulations for Augmentin.

### JURISDICTION AND VENUE

14.     The jurisdiction of this Court is based upon 28 U.S.C. §1331 and 1337(a) and 15 U.S.C. §22 and 26.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

15.    Venue is proper within this District under 15 U.S.C. §22 and 28 U.S.C. §1391(b) and (c), in that Defendant is found and transacts business within this judicial district.

## TRADE AND COMMERCE

16.    The drugs at issue in this case were sold in interstate commerce, and the unlawful activities of Defendant challenged in this action have occurred in, and have had a substantial effect upon, interstate commerce.

## THE PARTIES

### Plaintiff

17.    Plaintiff United Food and Commercial Workers Union ("UFCW") is an "employee welfare benefit plan" and "employee benefit plan" maintained pursuant to §302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §186(c)(5), and as defined by §1002(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq.* As such, UFCW is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. §1132(d). UFCW's office from which it pays medical benefits, including benefits for prescription drugs, is located in Cook County, Illinois.

18.    Pursuant to the Trust Agreement under which it was created, UFCW provides comprehensive health care benefits to approximately 24,000 participants who are employed under various collective bargaining agreements, and their dependents, as well as retirees.

19.     UFCW's health and medical benefits are provided under a written benefit plan.  Each plan contains certain subrogation provisions under which UFCW is subrogated to and assigned all the rights and causes of actions of its participants and beneficiaries for whom it pays benefits.  Many of UFCW's participants and beneficiaries were purchasers of Augmentin during the class period described below.  UFCW has paid for or reimbursed its participants' and beneficiaries' purchases of Augmentin during the class period.

**<u>Defendant</u>**

20.     SmithKline Beecham Corporation is a Pennsylvania corporation with its principal offices located at One Franklin Plaza, Philadelphia, Pennsylvania.  SmithKline Beecham also conducts business in the name of GlaxoSmithKline, Inc., and is a subsidiary of GlaxoSmithKline.

21.     Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, the identities of which are presently unknown, may have participated as co-conspirators with Defendant in the offenses alleged in this complaint, and have performed acts and made statements in furtherance of the alleged conspiracy to monopolize.

22.     The acts alleged in this Complaint to have been done by Defendant were authorized, ordered and performed by its officers, directors,

agents, employees, representatives of subsidiaries while engaged in the

management, direction, control or transaction of their business affairs.

## RELEVANT MARKET

23.    To the extent applicable to the claims alleged herein, the

relevant product market is the market for the manufacture and sale of

Augmentin and its generic bioequivalents rated "AB" by the FDA.

24.    The relevant geographic market is the United States as a whole

(for Counts I and IV), the states listed in ¶ (for Count III), and the Indirect

Purchaser States (for Count II).

25.    At all relevant times, Defendant's market share in the relevant

product and geographic markets was 100%.

## THE HATCH-WAXMAN ACT

26.    In 1984, Congress enacted the Drug Price Competition and

Patent Term Restoration Act, Pub. I., No. 98-417, 98 Stat. 1585 (1984)(the

"Hatch-Waxman Amendments"), amending the Federal Food, Drug, and

Cosmetics Act, 21 U.S.C. §301-392.  Under the Food, Drug, and Cosmetics

Act, pioneer drug manufacturers must obtain FDA approval for any new drug

by filing a New Drug Application (NDA).  A party seeking an NDA must

submit specific data concerning the safety and effectiveness of the drug, as

well as any applicable patent information.

27.    Under the Hatch-Waxman Amendments, a company seeking to

produce and market a generic form of a pioneer drug is only required to file

an Abbreviated New Drug Application ("ANDA"), in which it may rely on the
findings of safety and effectiveness included in the pioneer drug company's
original NDA.

28.    The most important new information required in the ANDA
concerns the generic company's position regarding the original patent, and
the company must make one of four certifications:

I.    That no patent for the pioneer drug has been filed with
the FDA (a "Paragraph I Certification");

II.    That the patent for the pioneer drug has expired (a
Paragraph II Certification");

III.    That the patent for the pioneer drug will expire on a
particular date and the generic company does not seek to
market its generic product before that date (a Paragraph
III Certification"); or

IV.    That the patent for the pioneer drug is invalid or will not
be infringed upon by the proposed generic company's
product (a Paragraph IV Certification").

21 U.S.C. §355(i)(2)(A)(vii).

29.    A company seeking Paragraph IV Certification must notify both
the patent owner and the NDA owner of the ANDA application. The
Secretary of the FDA will immediately approve the ANDA application upon
receipt of a Paragraph IV Certification, unless the patent owner initiates an
action for patent infringement within forty-five days. Once the patent owner
brings a patent infringement action, the final FDA approval of the ANDA is
postponed for 30 months from the receipt date of the notice. The court may

also order a shorter or longer period if a party to the action has not

reasonably cooperated in expediting the action, with the following exceptions:

> a. If before the expiration of such period a court decides that the patent is invalid or not infringed, the approval is effective on the date of the court decision,
>
> b. If before the expiration of such period the court decides that such patent has been infringed, the approval shall be effective on such date the [patent expires], or
>
> c. If before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent is invalid or not infringed, the approval shall be effective on the date of such court decision.

21 U.S.C. §355(i)(5)(B)(iii).

30. The Hatch-Waxman Amendments also offer a 180-day period of

market exclusivity to the first generic manufacturer successfully to file an

ANDA containing a Paragraph IV Certification. No other generic

manufacturer filing an ANDA for the affected drug may market its product

until this exclusivity period expires. The exclusivity period begins on the

date the generic manufacturer begins marketing the new drug or from the

date of a favorable patent infringement decision, whichever is earlier. If

neither of these conditions occurs, the exclusivity period cannot expire and

other generic manufacturers may not market their generic version of the

affected drug.

## FACTUAL ALLEGATIONS

31.    Augmentin was approved by the FDA in 1984 and was manufactured, marketed, and sold by Defendant since FDA approval was received.

32.    Defendant is not approved for and does not market generic forms of Augmentin.

### Geneva Files an ANDA for Augmentin and Obtains Judgments of Invalidity of the '977, '703, '093, '552, '352 and '720 Patents.

33.    Augmentin and its component parts were the subject of the following original patents, most of which have been stricken as invalid:  U.S. Patent No. 4,144,242 entitled Process for Purification of Clavulanic Acid (the '242 patent) issued on March 13, 1979; U.S. Patent No. 4,367,175 entitled Pure Potassium Salt of Clavulanic Acid (the '175 patent) issued on January 4, 1983; U.S. Patent No. 4,490,294 entitled Pure Salts of Clavulanic Acid (the '294 patent) issued on December 25, 1984; U.S. Patent No. 4,490,295 entitled Pure Potassium Salt of Clavulanic Acid (the '295 patent) issued on December 25, 1984; U.S. Patent No. 4,525,352 entitled Antibiotics (the '352 patent) issued on June 25, 1985; U.S. Patent No. 4,529, 720 entitled Antibiotics from Streptomyces Clavulicerus (the '720 patent) issued on July 16, 1985; and U.S. Patent No. 4,560,552 entitled Antibiotics (the '552 patent) issued on December 24, 1985.

34.    A subsidiary of Novartis filed an ANDA seeking FDA approval to manufacture, market and sell a generic version of Augmentin in the

United States on February 11, 2000. Geneva is currently the holder of this pending ANDA. Teva has also filed an ANDA seeking FDA permission to manufacture, market and sell a generic version of Augmentin.

35.    Typically, generic drugs are initially priced anywhere from 30 to 50 percent below the price of their brand-name equivalents.  As more generic manufacturers enter the market, prices decrease even further, while the brand-name drug loses more of its prescription drug share.  The price competition created by the entry of generics into the market benefits all direct purchasers, who then are able to buy the drugs at lower generic prices. Until a generic manufacturer enters the market, however, there is little price competition and therefore, little market pressure for lower prices.

36.    Facing the threat of extinction of its Augmentin "cash cow," Defendant, approximately eighteen days after Geneva filed its ANDA, began filing a series of patents that merely replicated the prior art established by the initial patents.  These patents include U.S. Patent No. 6,031,093 entitled Solid Salts of Clavulanic Acid (the "093 patent") issued on February 29, 2000; U.S. Patent No. 6,048,977 entitled Clavulanic Acid and Salts (the "977 patent") issued on April 11, 2000; U.S. Patent No. 6,051,703 entitled Purified Clavulanic Avid and Salts (the "703 patent") issued on April 18, 2000; and U.S. Patent No. 6,218,380 entitled Pharmaceutical Compositions (the "380 patent") issued on April 17, 2001.  Upon information and belief, Defendant, thereafter, submitted these patents to the FDA for inclusion in the Orange

Book in order to prevent a generic version of Augmentin from entering the
market.

37.    On May 31, 2001, Geneva commenced an action seeking a
declaration that the '093, '977, '703 and '380 patents are invalid.  In separate
actions, Teva and Ranbaxy sought similar declaratory relief.

38.    The Court carefully reviewed the claims concerning the '720 and
'380 patents. Claim 1 of the '720 patent provides as follows:

> 1.    A method of effecting [beta] lactamase
> inhibition in a human or animal in need thereof
> arising from a [beta] – lactamase producing
> bacteria which comprises administering to said
> human or animal a [beta] –lactamase inhibitory
> amount of clavulanic acid or pharmaceutically
> acceptance salt thereof.

Claim 1 - of the '380 patent, which follows in relevant part, is virtually the
same as Claim 1 of the '720 patent:

> 1.    A pharmaceutical composition useful for
> effecting [beta] lactamase inhibition in humans
> and animals which comprises [beta] – lactamase
> inhibitory amount of clavulanic acid in combination
> with a pharmaceutically acceptable carrier.

Indeed, the Court found that the '380 patent appears to be either a
rewording of the '720 patent of an obvious by-product of something already
included in that earlier patent." *Geneva Pharmaceuticals, Inc v.
GlaxoSmithKline PLC, et al.,* 189 F. Supp. 2d 377 (E.D. Va. 2002).  The Court
concluded by clear and convincing evidence that the differences between
these two patents are not patently distinct."*Id.*  Accordingly, the Court held

the '380 patent was invalid "on the ground of obviousness-type double patenting."*Id.*

39.    In subsequent rulings, on March 13, 2002, the Court found the '977, '703, '093, '552, '352 and '720 patents were also invalid "on the ground of obviousness-type double patenting."

40.    Defendant has indicated its intention to appeal these rulings and, in order to continue to improperly insulate its Augmentin product from generic competition, has warned generic manufacturers that "[I]f any company sells a generic form of Augmentin and we win on appeal, we will seek damages for loss of profits."*Glaxo Shares Fall After Court Ruling*, Financial Times, May 24, 2002, Section 8.

41.    Geneva received final FDA approval to manufacture, market and sell a generic version of Augmentin on April 18, 2002.  Upon information and belief, Geneva has not brought a generic version of Augmentin to market based upon Defendant's overt threat of reprisal.

### The Effects of Defendant's Anti-Competitive Conduct on the United States Market for Augmentin

42.    Defendant's improper manipulation of the Orange book, which resulted in automatic stays on FDA approval of generic competitors upon the filing of sham patent infringement lawsuits, is delaying and preventing the entry into the market of generic formulations of Augmentin in the United States.

43.     Although several of its patents have been declared invalid, Defendant continues to chill competition in the market for Augmentin and its generic equivalents through improper means, including threats of reprisal should Defendant prevail on its appeal of the patent rulings.

44.     The purpose of Defendant's anti-competitive conduct is to obtain and maintain monopoly power in the market for Augmentin and its generic equivalents.

45.     Due to Defendant's monopolization, horizontal competitors and potential horizontal competitors are being restrained and denied the opportunity to market competing products, which would be marketed at prices substantially lower than the cost of Defendant's Augmentin.

46.     As a result of Defendant's anti-competitive conduct, Plaintiff and the Class have been financially injured because Plaintiff and the Class have never had the opportunity to purchase lower-cost generic versions of Augmentin.

47.     By preventing generic competitors from entering the market, Defendant injured Plaintiff and the other Class members in their business and/or property by causing them to pay more for Augmentin products than they otherwise would have paid.  Defendant's unlawful conduct deprived Plaintiff and other End-payors of the benefits of competition that the antitrust laws and applicable state consumer protection laws were designed to preserve.

## CLASS ACTION ALLEGATIONS

48.    Plaintiff brings this action on its own behalf and, under Rule 23(b)(2) of the Federal Rules of Civil Procedure, with respect to declaratory and equitable relief sought herein, and under Rule 23(b)(3) of the Federal Rules of Civil Procedure, with respect to damages sought herein, as representative of a class (the "Class") defined as follows:

> All persons in the United States who purchased Augmentin for personal use at any time from December 25, 2001 to the present for injunctive relief, disgorgement and restitution under the Sherman Act (Count I) and the common law of fifty states (Count IV);
>
> All persons who purchased Augmentin in the "Indirect Purchaser States" for personal use at any time during the period from December 25, 2001 to the present (Count II); and
>
> All persons who purchased Augmentin in the states listed in ¶ of this Complaint for personal use at any time during the period from December 25, 2001 to the present (Count III).

Excluded from the above classes are governmental entities and Defendant and its subsidiaries and affiliates.

49.    While the exact size of the Class is unknown to Plaintiff at the present time, the members of the Class are believed to number in the thousands.   Thus, members of the Class are numerous and joinder is impracticable.  The Class members are identifiable from information and records regarding prescription drug sales maintained by physicians, pharmacies, drug stores and managed care organizations.

50.     Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all members of the Class were damaged by the same wrongful conduct of Defendant.

51.     Plaintiff will fairly and adequately protect and represent the interests of the Class.  The interests of Plaintiff are not antagonistic to the Class.

52.     Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

53.     Questions of law and fact common to the members of the Class predominate over questions, if any, that may affect only individual members because Defendant has acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.  Such generally applicable conduct is inherent in the Defendant's exclusionary and anticompetitive conduct in monopolizing and attempting to monopolize the market for Augmentin®and generic Augmentin, as alleged herein.

54.     Questions of law and fact common to the Class include:

(a)     Whether Defendant monopolized or attempted to monopolize the market for Augmentin®and generic Augmentin;

    (b)     Whether Defendant intentionally and unlawfully excluded competitors from the market;

    (c)     Whether Defendant was unlawfully enriched; and

    (d)     Whether Plaintiff and the Class are entitled to equitable relief.

55.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

56.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action as a class action.

## COUNT I

## MONOPOLIZATION AND ATTEMPT TO MONOPOLIZE UNDER §2 OF THE SHERMAN ACT AND INJUNCTIVE RELIEF UNDER §16 OF THE CLAYTON ACT

57.    Plaintiff incorporates by reference the averments of all preceding paragraphs as if set forth here in full.  The unlawful activities alleged herein occurred in interstate commerce.

58.    Plaintiff and members of the Class were injured in their business or property by virtue of Defendant's exclusionary and anticompetitive conduct.

59.    Plaintiff and the Class were compelled to pay supracompetitive prices that were manipulated and inflated by reason of the unlawful monopolization and attempts to monopolize the market for Augmentin® and generic Augmentin.

60.    Plaintiff and the Class have, as a consequence of Defendant's conduct, sustained substantial losses and damage to their business and property in the form of, inter alia, paying prices for their medication that were higher than they would have been but for Defendant's monopolization and attempts to monopolize that product market in the United States.  The full amount of such damages is presently unknown and will be determined after discovery and upon proof at trial.

61.    Defendant's unlawful conduct will continue, unless enjoined.

62.    Plaintiff has no adequate remedy at law.

## COUNT II

### MONOPOLIZATION AND ATTEMPT TO MONOPOLIZE IN VIOLATION OF LAW OF INDIRECT PURCHASER STATES

63.     Plaintiff incorporates by reference the averments of all preceding paragraphs as if set forth here in full.

64.     Defendant's monopolization and attempts to monopolize alleged herein violate the laws of Indirect Purchaser states as follows:

(a)     Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Arizona Revised Statutes §44-1401, *et seq.*, with respect to purchases of Augmentin in Arizona by members of the Indirect Purchaser Subclass;

(b)     Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Arkansas Unfair Practices Act, A.C.A. §4-75-201, *et seq.*, with respect to purchases of Augmentin in Arkansas by members of the Indirect Purchaser Subclass;

(c)     Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Cal. Bus. & Prof. Code §16750, *et seq.*, with respect to purchases of Augmentin in California by members of the Indirect Purchaser Subclass;

(d)  Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of the District of Columbia Antitrust Act of 1980 D.C. Code §28-4502, *et seq.*, with respect to purchases of Augmentin in the District of Columbia by members of the Indirect Purchaser Subclass;

(e)  Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of the Florida Antitrust Act of 1980, Fla. Stat. § 542.25, *et seq.*, with respect to purchasers of Augmentin in Florida by members of the Indirect Purchaser Subclass;

(f)  Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of the Iowa Competition Law, Iowa Code § 533.1, *et seq.*, with respect to purchases of Augmentin in Iowa by members of the Indirect Purchaser Subclass;

(g)  Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Kansas Statutes Annotated §50-101, *et seq.*, with respect to purchases of Augmentin in Kansas by members of the Indirect Purchaser Subclass;

(h)     Defendant has intentionally and wrongfully maintained
        and abused its monopoly power in the relevant market in
        violation of Louisiana Revised Statutes §51:137, *et seq.*,
        with respect to purchases of Augmentin in Louisiana by
        members of the Indirect Purchaser Subclass;

(i)     Defendant has intentionally and wrongfully maintained
        and abused its monopoly power in the relevant market in
        violation of Maine Revised Statutes Ann., 10 M.R.S.A. §
        1101, *et seq.*, with respect to purchases of Augmentin in
        Maine by members of the Indirect Purchaser Subclass;

(j)     Defendant has intentionally and wrongfully maintained
        and abused its monopoly power in the relevant market in
        violation of Massachusetts Ann. Laws, Ch. 93A, *et seq.*,
        with respect to purchases of Augmentin in Massachusetts
        by members of the Indirect Purchaser Subclass;

(k)     Defendant has intentionally and wrongfully maintained
        and abused its monopoly power in the relevant market in
        violation of the Michigan Antitrust Reform Act, MCL §
        445.771, *et seq.*, with respect to purchases of Augmentin
        in Michigan by members of the Indirect Purchaser
        Subclass;

(l)     Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of the Minnesota Antitrust Act of 1961, Minn. Stat. §25D.49, *et seq.*, with respect to purchases of Augmentin in Minnesota by members of the Indirect Purchaser Subclass;

(m)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of R.R.S. Neb. §59-801, *et seq.*, with respect to purchases of Augmentin in Nebraska by members of the Indirect Purchaser Subclass;

(n)     Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of the Nevada Unfair Trade Practice Act, Nev. Rev. Stat. Ann. §598A.010, *et seq.*, with respect to purchases of Augmentin in Nevada by members of the Indirect Purchaser Subclass;

(o)     Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of New Hamp. R.S.A. §56:1, *et seq.*, with respect to purchases of Augmentin in New Hampshire by members of the Indirect Purchaser Subclass;

(p)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of New Jersey Stat. Ann., N.J.S.A. §56:9-1, *et seq.*, with respect to purchases of Augmentin in New Jersey by members of the Indirect Purchaser Subclass;

(q)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of New Mexico Stat. Ann. §57-1-1, *et seq.*, with respect to purchases of Augmentin in New Mexico by members of the Indirect Purchaser Subclass;

(r)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of New York Gen. Bus. Law §340, *et seq.*, with respect to purchases of Augmentin in New York by members of the Indirect Purchaser Subclass;

(s)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of North Carolina Gen. Stat. §51:137, *et seq.*, with respect to purchases of Augmentin in North Carolina by members of the Indirect Purchaser Subclass;

(t)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in

violation of North Dakota Cent. Code §51-08.1-0, *et seq.*, with respect to purchases of Augmentin in North Dakota by members of the Indirect Purchaser Subclass;

(u)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Ohio Rev. Stat. §1331.01, *et seq.*, with respect to purchases of Augmentin in Ohio by members of the Indirect Purchaser Subclass;

(v)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of South Dakota Codified Laws Ann. §37-1, *et seq.*, with respect to purchases of Augmentin in South Dakota by members of the Indirect Purchaser Subclass;

(w)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Tenn. Code Ann. §47-25-101, *et seq.*, with respect to purchases of Augmentin in Tennessee by members of the Indirect Purchaser Subclass;

(x)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of 9 Ver. Stat. Ann. §2451, *et seq.*, with respect

to purchases of Augmentin in Vermont by members of the Indirect Purchaser Subclass;

(y)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of the Virginia Antitrust Act, Va. Code Ann. § 59.1-9.1, *et seq.*, with respect to purchases of Augmentin in Virginia by members of the Indirect Purchaser Subclass;

(z)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Rev. Code Wash. §19.86.010, *et seq.*, with respect to purchases of Augmentin in Washington by members of the Indirect Purchaser Subclass;

(aa)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of W. Va. Code §47-18-1, *et seq.*, with respect to purchases of Augmentin in West Virginia by members of the Indirect Purchaser Subclass;

(bb)    Defendant has intentionally and wrongfully maintained and abused its monopoly power in the relevant market in violation of Wisc. Stat. §133.01, *et seq.*, with respect to

purchases of Augmentin in Wisconsin by members of the

Indirect Purchaser Subclass.

65.    Plaintiff and the Indirect Purchaser Class seek damages and

treble damages, as permitted by law, for their injuries pursuant to these

statutes.

## COUNT III

## UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER STATE LAW

66.    Plaintiff incorporates by reference the averments of all

preceding paragraphs as if set forth here in full.

67.    Defendant engaged in unfair competition or unfair,

unconscionable, deceptive or fraudulent acts or practices in violation of the

state consumer protection statutes listed in ¶66(a)-(bb), above, when they

refiled prior art and obtained invalid patents in order to prevent the FDA

from granting final approval of pending applications of would-be competitors

to market generic Augmentin.  As a direct result of Defendant's

anticompetitive, deceptive, unfair, unconscionable, and fraudulent conduct,

Plaintiff and members of the Class were deprived of the opportunity to

purchase generic Augmentin.

68.    Defendant has engaged in unfair competition or unfair or

deceptive acts or practices in violation of Alaska Stat. §45.50.471, *et seq.*

69.    Defendant has engaged in unfair competition or unfair or

deceptive acts or practices in violation of Ariz. Rev. Stat. §44-1521, *et seq.*

70.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101, *et seq.*

71.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code §17200, *et seq.*

72.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Col. Rev. Stat. §6-1-105, *et seq.*

73.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. §42-110b, *et seq.*

74.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §2511, *et seq.*

75.    Defendant has engaged in unfair competition or unfair or deceptive act or practices in violation of D.C. Code §28-3901, *et seq.*

76.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.*

77.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Georgia Fair Business Practices Act of 1975, Off'l. Code. Ga. Ann. §10-1-390, *et seq.*

78.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Hi. Rev. Stat. §480, *et seq.*

79.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §48-601, *et seq.*

80.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. §505/1, *et seq.*

81.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kans. Stat. §50-623, *et seq.*

82.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. §367.110, *et seq.*

83.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. §51:1401, *et seq.*

84.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Maine Rev. Stat. §207, *et seq.*

85.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Comm'l Law Code §13-101, *et seq.*

86.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws Ch. 93A, *et seq.*

87.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. §445.901, *et seq.*

88.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §8.31, *et seq.*

89.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Stat. §407.010, *et seq.*

90.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code §30-14-101, *et seq.*

91.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §59-1601, *et seq.*

92.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. §598A, *et seq.*

93.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hamp. Rev. Stat. §358-A:1, *et seq.*

94.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New Jersey Revised Statutes §56:8-1, *et seq.*

95.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Statutes §57-12-1, *et seq.*

96.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Stat. §349, *et seq.*

97.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §75-1.1, *et seq.*

98.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of North Dakota Cent. Code §51-15-01, *et seq.*

99.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. §1345.01, *et seq.*

100.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ore. Rev. Stat. §646.605, *et seq.*

101.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Penn. Stat. §201-1, *et seq.*

102.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island General Laws §6-13.1-1, *et seq.*

103.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code §39-5-10, *et seq.*

104.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of South Dakota Laws §37-24-1, *et seq.*

105.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code §47-18-101, *et seq.*

106.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code §17.41, *et seq.*

107.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code §13-11-1, *et seq.*

108.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont §2451, *et seq.*

109.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Virginia Code §59.1-196, *et seq.*

110.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code §19.86.010, *et seq.*

111.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code §46A-6-101, *et seq.*

112.    Plaintiff and members of the class have been injured in their business and property by reason of Defendant's anticompetitive, unfair or deceptive acts alleged in this Court. Their injury consists of paying higher prices for Augmentin-based prescription drug products than they would have paid in the absence of these violations. This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendant's unlawful conduct.

## COUNT IV

## UNJUST ENRICHMENT

113.    Plaintiff incorporates by reference the averments of all preceding paragraphs as if set forth here in full.

114.    As a result of the conduct, Defendant has been and will continue to be unjustly enriched at the expense of the Plaintiff and the Class.

115.    Defendant has benefited from its unlawful acts and it would be inequitable for Defendant to be permitted to retain any of the ill-gotten gain obtained from Plaintiff and the Class, resulting from their overpayments for Augmentin.

116.    Plaintiff and members of the Class are entitled to the amount of the Defendant's ill-gotten gains resulting from its unlawful, unjust and inequitable conduct.  Plaintiff and members of the Class may make claims on a pro rata basis for restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

(a)    The Court determine that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for declaratory, equitable and injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for damages;

(b)      The conduct alleged herein be declared, adjudged and decreed to be unlawful monopolization and attempts to monopolize in violation of Section 2 of the Sherman Act, of the laws of the Indirect Purchaser States, and the common law of unjust enrichment of the fifty states;

(c)      Defendant be enjoined from continuing the illegal activities alleged herein;

(d)      Disgorgement of Defendant's unjust enrichment;

(e)      A judgment for the damages sustained by Plaintiff and the Class defined herein, and for additional damages, penalties, and other monetary relief provided by applicable law, including treble damages;

(f)      Plaintiff and the Class recover their costs of suit, including reasonable attorneys' fees as provided by law; and

(g)      Plaintiff and the Class members be granted such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.


DATED:  July ___, 2002                    Respectfully submitted,


_____
Dianne M. Nast, Esquire
Michael G. Nast, Esquire
RODA & NAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (Fax)

Kenneth A. Wexler, Esquire
Elizabeth Hartweg, Esquire
KENNETH A. WEXLER AND
ASSOCIATES
One North LaSalle Street
Suite 2000
Chicago, IL 60602
(312) 346-2222
(312) 346-0022 (Fax)

Daniel Gustafson, Esquire
HEINS MILLS & OLSON, P.C.
608 Second Avenue South
Minneapolis, MN 55402
(612) 338-4605
(612) 338-4692 (Fax)

Anthony J. Bolognese, Esquire
BOLOGNESE & ASSOCIATES, LLC
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
(215) 814-6750
(215) 814-6764 (Fax)

Ira Neil Richards, Esquire
TRUJILLO RODRIGUEZ &
RICHARDS, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
(215) 731-9004
(215) 731-9044 (Fax)

Jonathan D. Karmel, Esquire
KARMEL & GILDEN
221 North LaSalle Street
Suite 1414
Chicago, IL 60601
(312) 641-2910
(312) 641-0781


Attorneys for Plaintiff